The CITY OF DANVILLE MUNICIPAL
HOUSING COMMISSION, a Corpora-
tion, Appellant,

v.

The CITY OF DANVILLE, Kentucky,
Appellee.

Court of Appeals of Kentucky.

Oct. 24, 1958.

Rehearing Denied Jan. 30, 1959.

Jackson D. Guerrant, Danville, for ap-
pellant.

Wesley Gilmer, Jr., Danville, for ap-
pellee.

STANLEY, Commissioner.

The appeal is from a judgment declar-
ing that the appellant, The City of Danville
Municipal Housing Commission, is required
to pay sewer service charges to the City of
Danville.

The appellant was created under KRS
80.010 et seq. for the purpose of clearing
slums and developing low-cost housing
projects. On May 29, 1950, a contract,
styled "Cooperation Agreement" was made
by the City and the Commission (called
therein "Local Authority") for the mutual
execution and operation of the project,
composed of seventy housing units. The
agreement recognizes that such housing
projects are exempt from taxation and
provides, among other things, that so long
as the agreement is in force and effect,
the City will not levy or impose any taxes
or special assessments upon the project or
the Local Authority in respect thereto, and
that the Authority will make annual pay-
ments in lieu of such taxes and such as-
sessments and for public services and fa-
cilities furnished the project. The agree-
ment further provides that "the City
without cost or charge to the Local Au-
thority or the tenants of such project (oth-
er than the payments in lieu of taxes)
shall: (A) Furnish or cause to be fur-
nished to the Local Authority and the ten-
ants of such project (1) the public services
and facilities which are at the date hereof
being furnished without cost or charge to
other dwellings and inhabitants in the City,
including but not limited to: Educational,
fire, police and health protection and serv-
ices; maintenance and repair of public

streets, alleys, sidewalks, sewer and water systems; snow removal; garbage, trash and ash collection and disposal; street lighting on public streets within such project and on the boundaries thereof; and adequate sewer services for such project; and (2) also such additional public services and facilities as may from time to time hereafter be furnished without cost or charge to other dwellings and inhabitants in the city."

When the agreement was made, and for a while thereafter, the City did not make any charge for use of sanitary sewers by anyone. Thereafter, on July 6, 1951, the City combined its municipal water works and sewer system and provided for the issuance of revenue bonds to finance extensions and improvements thereof. KRS 58.010–58.140. By another ordinance, effective as of April 1, 1956, the City imposed "a sewer service charge, in the nature of a toll or rental" upon "every person who purchases water from the City of Danville, which water is returned to the sewer system." The amount was fixed at 40% of the water bill, subject to credit for water not turned into the sewers. Provision was included for the discontinuance of the water service for nonpayment.

The appellant paid the service charges until advised by the Public Housing Administration (apparently the federal agency) that it was not liable. The suit is for a declaration of rights with respect to the liability. As indicated above, the circuit court adjudged the Housing Commission to be liable for the sewer service charges.

The Commission contends that it is not liable under the agreement of May 29, 1950. It pleads for a broad and liberal construction of the contract in light of the fact that it is a public project rendering beneficial public service at the instance of the federal, state and municipal governments. It further claims that under the terms of the agreement it is paying to the city 10% of the aggregate rents collected from its tenants, alleged to amount to $2,060.81 a year, and it should not be required to pay more. More specifically, the Commission contends that the proper interpretation of the contract is that the City agreed, without qualification or limitation, to furnish and supply the enumerated services and facilities, expressly including sewers, which were on its date being furnished free to other inhabitants. Therefore, it is argued, the imposition of the charge is an attempt to impair the obligation of the contract. The appellant quotes unpublished decisions of two nisi prius courts, one in Florida and the other in the State of Washington, which support its construction of the contract. It does not appear from the quotations that the agreements involved were exactly the same as the Danville agreement.

It seems to us that, regarding the agreement as a whole, the intention of the parties was that the project should be treated equally with other residents of the City and should carry its own operating expenses to substantially the same extent as a similar private enterprise. While exempt from taxation because of its public character as an operating agency of the City, yet the Commission agreed to make contributions in lieu of taxes, no doubt passing on the same to its tenants so that they should share in the cost of government as do other citizens. There was some purpose in describing the "public services and facilities" to be rendered free as those which were at the time being rendered without direct or specific cost to "other dwellings and inhabitants in the City." This was a description rather than a commitment to exempt the project from paying in case any of such services or facilities should in the future be made chargeable to other inhabitants. This is indicated by the omnium-gatherum provision as to "such additional public services and facilities as may from time to time hereafter be furnished without cost or charge to other dwellings and inhabitants of the City."

We have held it was proper to provide in a similar sewer plan that a city should

pay monthly sewer service charges for its municipal buildings, the same as individuals and private corporations, as contributions to the amortization of the bonds. Francis v. City of Bowling Green, 259 Ky. 525, 82 S.W.2d 804.

Our construction of the Cooperation Agreement is the same as that of the circuit court, that it is limited to furnishing the Commission the enumerated services and facilities without cost only so long as the City does not charge others for them; therefore, the City had the right to impose the charges when it began to charge other persons. So, we do not reach the question argued by the appellee that even had the City attempted to do so, it could not bargain away its power to control its instrumentalities or to impose such charges as might later be found necessary or desirable. See in this connection Baker v. City of Princeton, 226 Ky. 409, 11 S.W.2d 94; Louisville & Jefferson County Metropolitan Sewer Dist. v. St. Matthews Sanitary Ass'n, 307 Ky. 348, 208 S.W.2d 490; State Home Loan Corp. v. Citizens Nat. Bank of Somerset, 307 Ky. 810, 211 S.W.2d 806.

The judgment is affirmed.